UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| CAROLYN S. DENNIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:14-CV-248-TLS |
| | ) | |
| PATRICK R. DONOHOE, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter comes before the Court on Defendant Patrick Donohoe's, Postmaster General of the United States, Motion for Summary Judgment [ECF No. 39]. The Plaintiff, Carolyn Dennis, filed a Complaint [ECF No. 3] on May 8, 2014, alleging age, gender, and race discrimination, and retaliation, pursuant to 42 U.S.C. § 2000, Title VII.[1] This matter is fully briefed and ripe for the Court's review.

**FACTS OF THE CASE**

The Court considers the following facts, which are derived from the Defendant's Statement of Material Facts, designated citations to the various declarations, and the Amended Complaint. The Plaintiff submitted a Statement of Material Facts, too, with some citations to the

---

[1] The Court notes that the Plaintiff has filed four separate lawsuits in federal district court over the last seven years—including the present lawsuit—all alleging Title VII claims against the Postal Service. *See Dennis v. Donohoe*, 2012 WL 1577445 (N.D. Ind. 2012); *Dennis v. Potter* (1:11-cv-58); *Dennis v. Potter*, 2010 WL 987217 (N.D. Ind. 2012). The Plaintiff's allegations in each case arose from separate incidents involving her employment with the Postal Service.

record, as well as an Affidavit[2] and an Exhibit.[3] The Court will summarize those facts necessary for a summary judgment determination, construed in a light most favorable to the Plaintiff. Further, the Court will consider those facts from the Defendants' Statement of Material Facts which are not challenged by the Plaintiff's Affidavit to be undisputed for the purposes of summary judgment. *See* Fed. R. Civ. P. 56(e)(2).

A. **Relevant Postal Service Personnel**

Plaintiff Carolyn Dennis worked for the United States Postal Service ("USPS") at the Main Post Office in Fort Wayne, Indiana, "as an EAS-17 Supervisor of Customer Service" from about 1999 until she retired on December 31, 2013. (Stmt. of Material Facts 2, ECF No. 39; Dennis Aff. ¶ 3, ECF No. 47-1.) The only other supervisor at the Main Post Office was Thom Green, a white male employee who was five years older than the Plaintiff and retired from USPS in June 2013. (Green Decl. ¶¶ 1–2; Dennis Req. No. 6, ECF No. 39-1.) However, their duties differed: the Plaintiff "manag[ed] the retail section of the Post Office, including the window and distribution clerks," while Green "managed the city letter carriers." (Dennis Aff. ¶ 38; Green Decl. ¶ 2.) Additionally, the Plaintiff was a non-bargaining unit employee, who was "assigned as

---

[2] The Defendant argues in its Reply that this Court cannot consider the Plaintiff's Affidavit because it is unsworn and undated. *See* 28 U.S.C. § 1746(2) (requiring that an unsworn declaration "executed within the United States" must include "Executed on (date)"). Although the Affidavit would be inadmissible as is, Rule 56(c)(2) permits a court to consider presently inadmissible evidence so long as it could be made admissible at trial. *See* Fed. R. Civ. P. 56(c)(2); *Freeman v. Ind. Dep't of Corr. Comm'r*, No. 3:14-CV-1989, 2016 WL 3671125, at *2 (N.D. Ind. July 11, 2016).

[3] The Exhibit [ECF No. 47-1] is over 100-pages, entitled "Clock Rings," and its significance remains a mystery. The Plaintiff provided no explanation for the Exhibit, failed to authenticate it, and opted not to provide pinpoint citations. "The court need consider only the *cited* materials, but it may consider other materials in the record," Fed. R. Civ. P. 56(c)(3) (emphasis added). Given the Plaintiff's lack of citations to assist the Court, the Exhibit will not be considered. *Id.* 56(c)(1)(A) (noting that a party must "cit[e] to particular parts of materials in the record" when supporting or opposing summary judgment).

needed" to accommodate the operational needs of USPS. (Gerardot Decl. ¶ 3, ECF No. 39-3; Gillig Decl. ¶ 6, ECF No. 39-2.)

Both the Plaintiff and Green reported directly to Karen Gillig, the Main Post Office's Manager of Customer Service, until June 2013 when Gillig retired. (Dennis Req. for Admis. No. 5; Gerardot Decl. ¶ 1; Gillig Decl. ¶¶ 1–3.) Gillig was not responsible for managing other supervisors located at different post offices in the Fort Wayne area, only those at the Main Post Office. (Dennis Aff. ¶ 9; Gerardot Decl. ¶ 6; Gillig Decl. ¶ 4.). And while Julie Allen, a Bulk Mail Entry Unit Technician, worked at the Main Post Office, Gillig did not manage her because she was a temporary supervisor who could work at other locations. (Gerardot Decl. ¶ 1; Gillig Decl. ¶ 4.) Gillig reported to Dawn Gerardot, who was the Postmaster of the Main Post Office in Fort Wayne, Indiana. (Gerardot Decl. ¶ 1; Gillig Decl. ¶ 1.)[4] The Greater Indiana District's Senior Post Office Operations Manager was David Conwell, who directly supervised Gerardot. (Conwell Aff. ¶ 5, ECF No. 39-5; Dennis Req. No. 3; Gerardot Decl. ¶ 2.)

**B.     Changes to Scheduled Days Off**

At some point in early 2013, Conwell met with supervisors and managers in the Fort Wayne area to instruct them to cut back on supervisor over time ("T-time") in order to reduce USPS operational costs. (Conwell Aff. ¶¶ 11, 13, 17, 20.) One of the identified issues was the Main Post Office's Saturday scheduling: in early 2013, the Plaintiff's scheduled days off were Saturday and Sunday, while Green only had Sunday off so there was supervisory coverage at that

---

[4] The Plaintiff asserts that "Postmaster Dawn Gerardot was responsible for . . . Centennial, Hazelwood, Northwood, Diplomat, Garbriel [sic], Main office, and Waynedale" stations in Fort Wayne, as well as all of their EAS-17 supervisors who worked at those various locations. (Dennis Aff. ¶ 11.) The Defendant disputes this assertion that Gerardot directly managed or supervised all other EAS-17 supervisors throughout Fort Wayne. (Gerardot Decl. ¶ 6.)

3

location on Saturday. (*Id.*; Dennis Aff. ¶ 15; Gillig Decl. ¶¶ 2–3; Green Decl. ¶ 3.) Because Green worked six days of the week and only took Sundays off, he accrued roughly 13–14 hours of T-time. (Conwell Aff. ¶¶ 11, 13, 17, 20; Green Decl. ¶ 3.)

Conwell suggested that Gillig rearrange supervisory coverage on Saturdays so that no single supervisor got T-time on Saturdays. (Conwell Aff. ¶¶ 11, 13, 17, 20; Gillig Decl. ¶ 5.) To achieve that, no supervisor would be allowed to work more than eight hours on Saturday and no supervisor could work more than four other days of the week. (Gillig Decl. ¶ 5.) Given that the carrier operation on Saturday tended to be more than eight hours, this meant that Gillig would have to schedule her two supervisors to work staggered eight hour shifts. (*Id.*)

In response to Conwell's directive, Gillig cut T-time in March 2013 by reducing Green's schedule to five working days instead of six, with Green receiving Fridays and Sundays off. (Dennis Req. Nos. 9–10; Gillig Decl. ¶ 5; Gerardot Decl. ¶ 2; Green Decl. ¶ 3.)[5] To increase supervisory coverage on Saturdays, Gillig changed the Plaintiff's scheduled days off from Saturday/Sunday to Sunday/Monday. (Gillig Decl. ¶ 5; Gerardot Decl. ¶ 2; Green Decl. ¶ 3.) As a result, Green lost overtime pay (Green Decl. ¶ 3.) The schedule change did not reduce the Plaintiff's pay or benefits (Gillig Decl. ¶ 5.) When carrier operations relocated from the Main Post Office to the Gabriel Post Office location in summer 2013, there was a reduced need for supervisory coverage on Saturdays. (Gerardot Decl. ¶ 4.) As a result, the Plaintiff's scheduled days off were changed back to Saturday/Sunday in July 2013 and made permanent in October

---

[5] At one point in her Affidavit, the Plaintiff disputes this fact by claiming that Gillig only changed her schedule and allowed "Green to work 6 days a week," as his "only day off was Friday." (Dennis Aff. ¶¶ 13, 17.) However, earlier in the Affidavit she contradicts herself by stating that "Green always had Fridays and Sundays scheduled off," thereby agreeing with the Defendant's account. (*Id.* ¶ 12.) The Plaintiff may not manufacture a dispute of fact through an internally inconsistent Affidavit. *See Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005).

2013 until her retirement at the end of that year. (*Id.*; Dennis Aff. ¶ 35; Moore Decl. ¶ 2, ECF No. 39-7.)

C.  **Holiday Vacation Requests**

In March 2013, the Plaintiff submitted to Gillig forms requesting 40 hours of time off during the week of Thanksgiving (November 23, 2013 to December 1, 2013) and 40 hours of time off during the week of Christmas (December 21, 2013 to December 29, 2013). (Dennis Aff. ¶ 21; Gillig Decl. ¶ 7.) Gillig was retiring on June 28, 2013, so she thought that her successor should make vacation determinations for personnel during that year's peak holiday times. (Gerardot Decl. ¶ 5; Gillig Decl. ¶ 7.) As such, Gillig denied the Plaintiff's requests for vacation on March 29, 2013, and asked the Plaintiff to resubmit the requests after she retired and her replacement came onboard. (Gillig Decl. ¶ 7.) On May 9, 2013, the Plaintiff resubmitted her leave requests, which were again denied because Gillig had not yet departed. (*Id.* ¶ 9.) However, Gillig decided to consult her replacement, at which point the Plaintiff's request was approved for Thanksgiving. (*Id.*) Once Lisa Moore took over as Acting Manager of the Main Post Office in 2013, the Plaintiff resubmitted her Christmas vacation requests on November 4, 2013, and November 8, 2013, which were ultimately approved. (Moore Decl. ¶ 2)[6]

**COMPLAINT ALLEGATIONS AND PROCEDURAL BACKGROUND**

The Plaintiff has alleged discrimination against the Defendant based on her age, gender, and race, and retaliation for prior Equal Employment Opportunity ("EEO") filings. The specific incidents supporting her claim are (1) the changing of her non-scheduled days from

---

[6] The Plaintiff made two separate requests because she sought annual leave from December 19, 2013 to December 24, 2013 and sick leave for dependent care from December 26, 2013 to December 30, 2013. (Moore Decl. ¶ 2.)

Saturday/Sunday to Sunday/Monday and (2) the denial of her holiday vacation requests in 2013. (Compl. ¶ 5, ECF No. 3.) The Plaintiff argued that other employees, including Green, received their requested days off when she did not (*id.* ¶¶ 15–16), and that her schedule changes and denials of vacation requests happened because of her protected activity in filing six prior EEO complaints (*id.* ¶ 17).

The Plaintiff filed her discrimination charge with the USPS EEO on or about December 13, 2013. (*Id.* ¶ 19, Ex. A.) USPS EEO issued its final agency decision, which was adverse to the Plaintiff's claims, on February 12, 2014. (*Id.*) Thereafter, the Plaintiff filed her Complaint [ECF No. 3] with this Court on May 8, 2014. The Defendant filed a Motion to Dismiss for Lack of Subject-Matter Jurisdiction [ECF No. 8] on August 19, 2014, which this Court denied on February 12, 2015, [ECF No. 15]. On May 1, 2015, the Defendant's Answer [ECF No. 20] was filed. After conducting discovery, the Defendant moved for Summary Judgment on May 3, 2016 [ECF No. 38]. The Plaintiff filed her Response [ECF No. 47] on July 28, 2016. The Defendant's Reply [ECF No. 48] was entered on August 8, 2016.

**STANDARD OF REVIEW**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the nonmoving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in that party's favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court should only deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (first citing *United States v. 5443 Suffield Terrace*, 607 F.3d

504, 510 (7th Cir. 2010); then citing *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. [A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

**DISCUSSION**

The Plaintiff alleges two specific incidents in her Complaint as violations of Title VII. First, the changing of her non-scheduled days from Saturday/Sunday to Sunday/Monday. (Compl. ¶ 5.) Second, the denial of her vacation requests when other employees' requests were granted. (*Id.* ¶¶ 5, 15–16.) Both of these incidents constitute discrimination, the Plaintiff argues, based on gender, age, and retaliation for her prior protected activity of filing six EEO complaints. (*Id.* ¶¶ 15–17.) The Defendant's Motion for Summary Judgment states the Plaintiff has failed to provide sufficient evidence to support a Title VII claim, and that there were legitimate reasons for the two incidents.

### A. Incidents Not Raised in Complaint

Before beginning its analysis, the Court notes that the Plaintiff raised two additional claims and factual incidents for the first time in her Response to the Defendant's Motion for Summary Judgment. "The complaint filed in the district court and the charge filed with the EEOC must, at a minimum, describe the same circumstances and participants." *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (citing *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202–03 (7th Cir. 1996)). Whether issues raised in a complaint are within the scope of those issues raised in an EEOC charge is a question of law. *Conner*, 413 F.3d at 680; *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864–66 (7th Cir. 1985). Additionally, "a plaintiff may not amend h[er] complaint through arguments in [her] brief in opposition to a motion for summary judgment." *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) (quoting *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996)).

Here, the additional claims were, first, that the Plaintiff's schedule change required her, in addition to working at the Main Post Office, to drive to Gabriel Station, for which she was not compensated $252 in gas mileage. (Dennis Aff. ¶¶ 4–5, 16.) Second, that the Plaintiff's schedule change exacerbated her "medically related work restrictions"—a phrase upon which she does not elaborate or offer specifics. (*Id.* ¶¶ 29–30, 33.) Both of these allegations fall outside the scope of the Complaint and the charge filed with the EEOC, which focused solely on the change in days off and the denial of vacation requests. Raising these additional incidents now is an attempt by the Plaintiff to amend her Complaint, which she may not do. Accordingly, the Court only considers those claims raised in the Complaint.

**B.     Prima Facie Case for Title VII Claims**

Discrimination under Title VII may be proven under either the direct or indirect method of proof. *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). "Under the 'direct method,' the plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Relevant circumstantial evidence includes "suspicious timing or ambiguous statements, evidence that others outside the protected class were systematically treated better, or evidence that the employer gave a pretextual reason for the adverse employment action." *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 877 (7th Cir. 2014). "Regardless of the type of evidence presented, the direct method is used when that evidence would permit the trier of fact to find that unlawful discrimination caused the adverse job action." *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014); *see also Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013) (stating that the relevant analysis is whether a reasonable jury could infer prohibited discrimination).

Under the indirect method of proving a Title VII claim, a plaintiff meets her initial burden by showing that: (1) she is a member of a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 815 (7th Cir. 2015); *Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 511–12 (7th Cir. 2012). The prima facie case for establishing retaliation is the same, except that the plaintiff must have engaged in statutorily protected activity and identify comparators who did not, thereby demonstrating a causal connection. *See*

*Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2007). If the plaintiff meets her burden, then the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Preddie*, 799 F.3d at 815 (quoting *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014)). "Pretext means a lie, specifically a phony reason for some action." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002).

The Plaintiff does not rely upon the direct method to prove her case. Rather, she invokes the burden-shifting, indirect method. Accordingly, the Court will assess whether the Plaintiff's claims survive summary judgment under the indirect method. With regard to the first two elements of the prima facie case, the Plaintiff has satisfied her burden of proof. The Plaintiff established her membership in a protected class given her race and gender (white, female) (Dennis Aff. ¶ 2), and her age (date of birth of October 26, 1954) (Compl. Ex. 1, at 22). In addition, she engaged in statutorily protected activity by filing prior EEO complaints. (*Id.* at 1.) Additionally, the Plaintiff has shown that there were no complaints as to her performance, having received "meets or exceeds employer's requirements and job expectation[s]" performance evaluations and raises over the last four years of her employment. (Dennis Aff. ¶ 40.)

C.     **Materially Adverse Employment Action**

"The requirement that a plaintiff show she suffered an adverse employment action as a result of her employer's alleged discrimination is an element of any Title VII claim." *Chaib v. Indiana*, 744 F.3d 974, 982 (7th Cir. 2014). Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment"

on the basis of the individual's sex. 42 U.S.C. § 2000e-2(a)(1). Title VII's prohibition against discrimination with respect to terms, conditions, or privileges of employment reaches only "material, sufficiently important alterations of the employment relationship (often referred to as 'adverse employment actions')"). *Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 916–17 (7th Cir. 2007) (citing *Minor v. Centocor, Inc.*, 457 F.3d 632, 634 (7th Cir. 2006)). "A cognizable adverse employment action is a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Chaudhry v. Nucor Steel-Ind.*, 546 F.3d 832, 838 (7th Cir. 2008) (quoting *Bell v. EPA*, 232 F.3d 546, 555 (7th Cir. 2000)). An action is materially adverse for purposes of retaliation if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks omitted). The "purpose of the adverse employment action requirement is to provide a reasonable limiting principle for the type of conduct actionable under the statute." *Phelan v. Cook Cnty.*, 463 F.3d 773, 780 (7th Cir. 2006). "[A] statute which forbids *employment* discrimination is not intended to reach every bigoted act or gesture that a worker might encounter in the workplace." *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 653 (7th Cir. 2000).

Here, it is debatable that the two incidents the Plaintiff relies upon—her scheduled days off change and the denial of her vacation requests—qualified as adverse employment actions. As a nonbargaining unit, FLSA exempt employee, the Plaintiff was "assigned as needed" and would have expected possible schedule changes. Without an expectation that her schedule was unalterable, actual changes to the Plaintiff's schedule would not have altered the terms and conditions of employment, and thus would not have been adverse employment actions. *See*

*Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004); *Grube v. Lau Indus.*, 257 F.3d 723, 728 (7th Cir. 2001). Similarly, the change in the Plaintiff's days off cannot qualify as retaliation because no reasonable employee would have been dissuaded from complaining. Further, the incidents complained of were not materially adverse for purposes of discrimination or retaliation because they were temporary. The change of days off from Saturday/Sunday to Sunday/Monday only lasted from March until the summer, her vacation requests were ultimately approved, and neither decision reduced the Plaintiff's pay or benefits. (Gillig Decl. ¶ 5.) Accordingly, it does not appear that the Plaintiff suffered an adverse employment action.[7]

Even if those incidents qualify as adverse employment actions, the Plaintiff has not presented evidence to support the fourth element of a prima facie case—similarly situated employees outside the Plaintiff's protected class were treated more favorably. The only relevant evidence[8] involves Green, the other supervisor at the Main Post Office, who was also white, male, and five years older than the Plaintiff. With regard to the March 2013 changes in schedule, the determination was actually more adverse to Green than it was to the Plaintiff. Green switched from working six days of the week to only working five and having nonconsecutive days off (Friday/Sunday), whereas the Plaintiff still had consecutive days off (Friday/Saturday), which Gillig did to accommodate her. (Gillig Decl. ¶ 5.) With regard to their vacation requests, the Plaintiff's proffered evidence stated that Green "got first choice on his vacation submission." (Dennis Aff. ¶¶ 20–21.) However, the Plaintiff also received her first choice for vacation

---

[7] The Plaintiff attempts to have it both ways by arguing that her schedule change was an adverse employment action because it (1) forced her to work more hours "outside her medical restrictions," (Resp. 13), but also (2) caused her to work less hours and receive less overtime than Green (Dennis. Aff. ¶¶ 15, 18, 23). Such a contention is without merit.

[8] Although the Plaintiff points to other employees who were male or non-white, none of them were *supervisory* employees at the Main Post Office that reported to or were supervised by Gillig, and thus they are not relevant for purposes of this analysis.

requests—Thanksgiving and Christmas—albeit after Gillig's replacement took over. Thus, there is no comparator for any of the Plaintiff's claims, including retaliation.[9]

Most of the evidence is primarily geared toward retaliation nonetheless, but it fails to show how the Plaintiff's protected activity caused the adverse employment actions. Gillig and Conwell were both aware that the Plaintiff had prior EEO activity. (Compl. Ex. A, at 25.) However, Plaintiff fails to show that their knowledge of her prior filings led them to take retaliatory action against her. From a temporal standpoint, the most recent filing "was closed approximately a year and a half before the date on which her schedule was changed," (*Id.* at 26), which fails to give rise to an inference of causation, *see Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that period of greater than three or four months is insufficient to establish causation). And there is no evidence with which the Court may infer that the denial of the Plaintiff's leave requests was because of her prior EEO filings.[10]

## D.  Burden Shifting and Pretext

Had the Plaintiff established a prima facie case, the burden would have shifted to the Defendant to provide a "legitimate, nondiscriminatory reason" for the decision. *Preddie*, 799 F.3d at 815. With regard to the change in the Plaintiff's scheduled days off, the Defendant explained that it was a temporary move in order to reduce overtime costs incurred by USPS and to increase operational efficiency. Indeed, Conwell only told Gillig to try to reduce overtime, not how to do it, and Gillig identified Green, not the Plaintiff, as the person whose overtime hours

---

[9] Assuming that Green qualified as a comparator for purposes of age discrimination, the Plaintiff's claim would nevertheless fail because of the fact that Green was treated less favorably, as opposed to more favorably.
[10] The fact that Green, who did not engage in protected activity, was also subject to a schedule change at the same time as the Plaintiff (and also received a reduction in overtime pay as a result) cuts against any such inference.

13

should decrease. With regard to the Plaintiff's vacation requests (which fell during Thanksgiving and Christmas), Gillig chose to let her midyear replacement make personnel decisions for the holidays. These are both legitimate reasons for the employment decisions.

At that point, the burden would have shifted back to the Plaintiff to show that the USPS' reasons were pretextual, "lies," or "phony." *Millbrook*, 280 F.3d at 1175. This the Plaintiff did not do. Her reference to an older policy for requesting vacation days does not transform the new one into a lie. Additionally, her conclusory statements like "Other parties weren't denied vacation requests, I was singled out," without more, fails to establish that the Defendant's explanations were pretext for discrimination.

In sum, the Plaintiff has failed to produce evidence sufficient to establish a genuine dispute of material fact regarding her Title VII claims. As such, the Defendant is entitled to judgment as a matter of law on the Title VII claims.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 39].

SO ORDERED on October 31, 2016.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT